# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

BAMBI DAVIS,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:06-cv-838
(Beckwith, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the

final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's

application for disability insurance benefits (DIB). This matter is before the Court on

plaintiff's Statement of Errors (Doc. 9), and the Commissioner's response in opposition. (Doc.

12).

## PROCEDURAL BACKGROUND

Plaintiff, Bambi Davis, was born on March 24, 1955, and was 50 years old at the time

of the ALJ's first decision, and 51 years old at the time of the ALJ's second decision. Plaintiff

has an eleventh grade education and past work experience as a meat packer, a time keeper,

housekeeper, and bakery worker. Plaintiff filed an application for DIB alleging disability

since November 8, 2001, due to asthma, allergies, carpal tunnel syndrome and thoracic outlet

syndrome. Plaintiff's application was denied initially and upon reconsideration. Plaintiff

requested and was granted a de novo hearing before an ALJ. On October 7, 2004, plaintiff, who was represented by counsel, appeared and testified at a hearing before ALJ Deborah Smith. On April 13, 2005, the ALJ denied plaintiff's application for benefits. (Tr. 33-39).

Plaintiff appealed and the Appeals Council remanded the case for further proceedings. The ALJ was ordered to further evaluate plaintiff's subjective complaints and consider the weight to be given to plaintiff's treating physician. (Tr. 40-42).

A supplemental hearing was held on March 2, 2006. Plaintiff, who was again represented by counsel, appeared and testified before ALJ Smith. (Tr. 323-346). A vocational expert also testified.

On March 29, 2006, the ALJ issued a decision denying plaintiff's DIB application. The ALJ determined that plaintiff suffers from severe impairments of respiratory disease, degenerative disc disease of the cervical spine, and thoracic outlet syndrome, but that such impairments do not alone or in combination meet or equal the level of severity described in the Listing of Impairments. (Tr. 21). The ALJ determined that plaintiff's allegations regarding her limitations are not totally credible. (Tr. 21). According to the ALJ, plaintiff retains the residual functional capacity (RFC) for medium work in a relatively clean air environment not exposed to temperature extremes. (Tr. 20). The ALJ adopted the RFC opinion of the non-examining state agency doctors, except for the handling restrictions listed in the assessment. (Tr. 20). The ALJ further found that even if plaintiff had these handling limitations, she could perform other jobs in the local and national economy as identified by the vocational expert at the hearing. (Tr. 20). The ALJ determined that plaintiff is unable to perform her past relevant work. (Tr. 20). The ALJ concluded that plaintiff is not disabled under the Act.

Plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national

3

economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the

4

Commissioner to show that plaintiff can perform other substantial gainful employment and
that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291
(6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To
rebut a prima facie case, the Commissioner must come forward with particularized proof of
plaintiff's individual capacity to perform alternate work considering plaintiff's age, education,
and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d
321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735
F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the
Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut
plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587
F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771
(6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to
substantial weight. "In general, the opinions of treating physicians are accorded greater
weight than those of physicians who examine claimants only once." *Walters v. Comm'r of
Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431,
435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally
accorded substantial deference, and if the opinions are uncontradicted, complete deference.");
*King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708
F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to
weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*,
756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th

5

Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530.

The Social Security regulations recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan*

6

*v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. Jan. 2, 1990) (unpublished, available on Westlaw). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## **OPINION**

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 9 at 5-7; Doc. 12 at 4-9) and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns a single error in this case: that the ALJ erred in determining plaintiff's RFC. Specifically, plaintiff contends the ALJ failed to give appropriate weight to the opinions of her treating physicians and erroneously relied on the opinion of the non-examining state agency physicians contrary to the law of the Sixth Circuit Court of Appeals.[1] For the reasons that follow, the Court finds the ALJ's RFC decision is not supported by substantial evidence and recommends that this matter be reversed and remanded for benefits.

The ALJ determined that plaintiff has the RFC for a full range of work "except that she is limited as described by physicians who reviewed the record on behalf of the state agency in January and March 2003." (Tr. 20). The non-examining state agency physicians opined that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and was limited in her ability push and/or pull with her upper extremities. (Tr. 210). The state agency doctors also opined that plaintiff was limited in her handling ability (Tr. 212) and must avoid even moderate exposure to extreme cold and heat, fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 213). The ALJ determined that plaintiff was capable of performing "a range of medium work in a relatively clean air environment not exposed to temperature extremes." (Tr. 20). The ALJ further

---

[1]The Court notes that plaintiff does not challenge the ALJ's RFC finding as it relates to impairments other than plaintiff's respiratory impairment. Therefore, the Court's opinion is limited to examining the ALJ's decision and record with respect to plaintiff's respiratory impairment.

8

determined that plaintiff does not have the handling limitations set forth in the state agency doctors' RFC, but that even if she did she would not be disabled. (Tr. 20).

There are four RFC assessments from the doctors in the record. Three are from plaintiff's treating physicians, Drs. Dammel and Ghory, who assessed plaintiff's functional ability at sedentary and less than sedentary. (Tr. 220-225, 281-284, 318, 340). The one from the non-examining state agency physicians, who were without the benefit of *any* of the medical evidence post-dating March 2003, including Dr. Dammel's progress notes submitted after the first ALJ hearing pursuant to the Appeals Council remand and Dr. Ghory's progress notes and RFC assessment, opined that plaintiff could perform the lifting, standing, and walking consistent with medium work activity. (Tr. 209-216)[2]. In determining plaintiff's RFC, the ALJ relied on the opinion of the non-examining state agency doctors who reviewed the record in January and March 2003, while rejecting the opinions of plaintiff's treating physicians, Drs. Dammel and Ghory. The ALJ's decision in this regard is without substantial support in the record.

Dr. Richard Dammel, plaintiff's treating internist, treated plaintiff for over six years from January 1999 to June 2005. Dr. Dammel submitted two RFC opinions. The first, rendered in July 2003, states that due to asthma[3] plaintiff could not lift and carry more than 10 pounds occasionally; could occasionally balance, stoop, crouch, kneel, and crawl; but could

---

[2] The second state agency physician did not elaborate on the first consultant's RFC, but merely stated "the RFC dated 1/15/03 is hereby affirmed." (Tr. 216).

[3] Asthma is defined as "a disease of diffuse airway inflammation caused by a variety of triggering stimuli resulting in partially or completely reversible bronchoconstriction. Symptoms and signs include dyspnea, chest tightness, and wheezing. The diagnosis is based on history, physical examination, and pulmonary function tests." *See* Merck Manual online found at www.merck.com/mmpe/sec05/ch048/ch048a.html?qt=asthma&alt=sh

9

never climb. (Tr. 224). He also opined that due to plaintiff's severe asthma, she could not be around chemicals, temperature extremes, dust, fumes, and humidity. (Tr. 225).

On August 11, 2003, Dr. Dammel completed a second assessment of plaintiff's physical abilities. (Tr. 220). He opined that plaintiff could lift and carry 10 pounds occasionally and frequently. (Tr. 220). However, Dr. Dammel stated that when plaintiff's asthma was bad, she could not lift this amount. (Tr. 220). Dr. Dammel also opined that plaintiff's standing and walking were limited, and when her asthma was acting up, she could not walk for any distance. (Tr. 220). He opined that plaintiff could sit for 8 hours in a workday, for 1 to 2 hours without interruption. (Tr. 221). Dr. Dammel opined that plaintiff was limited to only occasional climbing, balancing, stooping, crouching, kneeling, and crawling due to shortness of breath with exertion. (Tr. 221). He also noted limitations on pushing and pulling and exposure to chemicals, temperature extremes, dust, fumes, and humidity due to asthma. (Tr. 221-22).

Dr. Ann Ghory, plaintiff's treating pulmonary specialist, has treated plaintiff's respiratory impairments since April 15, 2002, after a referral by Dr. Dammel, through at least February 2006. (Tr. 204, 256). On February 9, 2006, Dr. Ghory completed a pulmonary residual functional capacity questionnaire. (Tr. 281). Dr. Ghory diagnosed moderate severe

10

asthma[4], vasomotor rhinitis[5], GERD[6], and anxiety/panic attacks. (Tr. 281).  Plaintiff's

symptoms included shortness of breath, chest tightness, wheezing, and episodic acute asthma;

precipitating factors included upper respiratory infection, allergens, exercise, emotional

upset/stress, irritants, cold air, and changes in weather. (Tr. 281).  Dr. Ghory noted that

plaintiff could have an acute onset of wheezing triggered by smells, change in weather,

allergens or stress. (Tr. 281).  Dr. Ghory stated that plaintiff wheezes daily without her

medications and was incapacitated for one to two days when she had an asthma attack. (Tr.

282).  In a typical workday, plaintiff would occasionally experience pain or other symptoms

which would interfere with her attention and concentration. (Tr. 282).  Dr. Ghory also opined

that plaintiff was incapable of even low stress jobs. (Tr. 282).  Dr. Ghory explained that

plaintiff's "asthma gets set off very easily and it is unpredictable how her asthma is going to

be." (Tr. 282).  Plaintiff's medications included Advair 500/50, Allegra, Albuterol with

Nebulizer, and Singulair. (Tr. 282).  Dr. Ghory assessed plaintiff's prognosis as fair. (Tr. 282).

---

[4]"Asthma is classified into 4 categories—mild intermittent, mild persistent, moderate persistent, and severe persistent—according to symptoms. Because the course of asthma varies, a patient may move among categories. Regardless of the category, a patient may have mild, moderate, or severe exacerbations. For example, some patients with mild intermittent asthma have severe, life-threatening exacerbations separated by long periods of no or mild symptoms and normal pulmonary function."  See Merck Manual online found at www.merck.com/mmpe/sec05/ch048/ch048a.html?qt=asthma&alt=sh

[5]"Vasomotor rhinitis is a chronic condition in which intermittent vascular engorgement of the nasal mucous membrane leads to watery rhinorrhea and sneezing. Etiology is uncertain, and no allergy can be identified. A dry atmosphere appears to aggravate the condition." See Merck Manual online found at www.merck.com/mmpe/sec08/ch091/ch091f.html?qt=vasomotor%20rhinitis&alt=sh

[6]"Gastroesophageal reflux disease (GERD) has recently been recognized as a common trigger of asthma, possibly via esophageal acid-induced reflex bronchoconstriction or by microaspiration of acid." See Merck Manual online found at www.merck.com/mmpe/sec05/ch048/ch048a.html?qt=asthma&alt=sh

11

She further opined that plaintiff could occasionally lift 10 pounds, walk one block, sit for 6 hours total and for one hour at a time, and stand for 6 hours total and for 30 minutes at time. (Tr. 283). Dr. Ghory stated that plaintiff would need to take one to two unscheduled breaks per day for about a half hour if her asthma was acting up. (Tr. 283). Plaintiff could occasionally stoop, crouch, squat, and climb ladders or stairs. (Tr. 283). However, she had to avoid all exposure to extreme cold, cigarette smoke, soldering fluxes, solvents, cleaners, fumes, odors, gases, and chemicals; and she had to avoid even moderate exposure to extreme heat, high humidity, wetness, perfumes, and dust. (Tr. 284). Dr. Ghory estimated that plaintiff would miss more than four days of work per month. (Tr. 284). Dr. Ghory stated that plaintiff's "asthma can be just fine then get set off quickly. She can't always predict the trigger." (Tr. 284). Dr. Ghory stated that plaintiff has "increased asthma difficulty with cold air, stress, high humidity, odors, certain allergens, and exercise, especially any running." (Tr. 284).

As indicated above, the ALJ rejected the opinions of Drs. Dammel and Ghory in formulating plaintiff's RFC. Although the ALJ is not bound by a treating physician's opinion, he must set forth in his decision a reasoned basis for rejecting the opinion. *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)(failure to specify the reason for giving a treating physician's opinion no weight is reversible error); *Jones v. Heckler*, 760 F.2d 993, 997 (9th Cir. 1985)(ALJ must set forth "specific, legitimate reason[s]" for disregarding a treating physician's opinion), both cited with approval in *Shelman*, 821 F.2d at 321. The ALJ must articulate "good reasons" for not giving weight to a treating physician's opinion and such reasons must be based on the

**12**

evidence of record. *See Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). *See also Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Lenon v. Apfel*, 191 F. Supp.2d 968, 977 (W.D. Tenn. 2001); *Sigler v. Secretary of Health and Human Servs.*, 892 F. Supp. 183, 187-88 (E.D. Mich. 1995).

The ALJ declined to accept Dr. Dammel's August 2003 RFC assessment[7] that plaintiff was unable to perform more than sedentary work because Dr. Dammel "did not give an underlying diagnosis, explain what findings supported his conclusions, nor did he state how frequently he saw the claimant. He did not indicate what treatment was rendered or what testing was done (Exhibit 8F, pp. 1-4)." (Tr. 18-19). The ALJ also stated that Dr. Dammel's treating notes "do not reflect exacerbations of the claimant's asthma requiring nebulizer treatment, oxygen, or prednisone." (Tr. 19).

It is apparent from a reading of Dr. Dammel's August 2003 RFC assessment, his July 2003 assessment, and his office records submitted in support of plaintiff's claim that the underlying diagnosis upon which he based his opinion was asthma. Where Dr. Dammel limited plaintiff's functional ability, he cited to her "severe asthma" or "asthma" in support of these restrictions. (Tr. 220, 221, 222, 223, 225). His office records document clinical findings of wheezing, shortness of breath, and cough, and note that plaintiff was treated with various asthma medications. (Tr. 164, 171, 173-74, 176, 268, 269, 287).

The ALJ also points to a lack of frequency of examination as a reason to reject Dr. Dammel's assessment. While the frequency of examination is a factor to consider in weighing the treating physician's opinion, *Wilson*, 378 F.3d at 544, it is disingenuous in this case for the

---

[7]The ALJ omits any discussion of Dr. Dammel's July 2003 RFC.

ALJ to focus on that factor and give less weight to Dr. Dammel who treated plaintiff for her asthma for over six years[8] and referred plaintiff to a specialist for treatment of her asthma while giving more weight to the physicians who never examined plaintiff and gave an opinion based on only a portion of the medical records submitted before March 2003.

The ALJ also discounted Dr. Dammel's RFC because his notes do not reflect the types of treatment one would expect with "frequent exacerbations" of asthma such as "nebulizer treatment" or "prednisone." (Tr. 19). However, it is undisputed that Dr. Ghory prescribed and plaintiff used a home nebulizer (an electronic breathing machine used to dispense asthma medication) since at least November 2002. (Tr. 205). In addition, emergency room records from June 2003 show plaintiff was prescribed prednisone for an acute exacerbation of asthma after she was found unconscious on her driveway. (Tr. 227, 241). Thus, the ALJ's rejection of Dr. Dammel's opinion in this respect is without substantial support in the record.

The ALJ also declined to accept the assessment of Dr. Ghory, whose assessment would preclude all work activity. (Tr. 340). The ALJ rejected Dr. Ghory's February 2006 RFC assessment stating, "Dr. Ghory did not state how frequently or severe the claimant's asthma attacks are, nor do any of her treatment notes. In fact, updated office notes from Dr. Ghory provided by claimant's counsel do not reflect difficulties due to asthma consistent with this capacity assessment (Exhibit 11F, pp. 4-8). A pulmonary function study performed in January 2006 yielded normal spirometry. (Exhibit 12F, p.6)." (Tr. 19).

The ALJ's reasons for discounting Dr. Ghory's opinions are without substantial

---

[8] Dr. Dammel appears to relate plaintiff's employment at JTM, a meatpacking plant and bakery, with the onset or her breathing problems in February 1999. (Tr. 164).

14

support in the record. Contrary to the ALJ's decision, Dr. Ghory reported that plaintiff "has daily asthma" in response to the question, "If the patient has asthma, chronic bronchitis or chronic pneumonia, how many episodes have there been in the past 12 month?" (Tr. 218). Dr. Ghory also reported that plaintiff "wheezes daily without her meds" in response to the question, "How often does your patient have asthma attacks?" (Tr. 281). More importantly, the ALJ ignores Dr. Ghory's response to the question, "Characterize the nature and severity of your patient's attacks." (Tr. 281). Dr. Ghory reported, "She can have an acute onset of wheezing triggered by smells, changes of weather, allergens or stress" which incapacitate her for "1-2 days." (Tr. 281, 282). Dr. Ghory's office notes document findings of cough, dyspnea, wheezing, sneezing, nasal congestion (Tr. 246, 247, 250, 252, 253, 254, 256, 262) and reflect objective findings of a methacholine challenge study (Tr. 204, 206-207, 254) and positive skin tests to trees, ragweed, molds, and mites. (Tr. 204, 255). Dr. Ghory's findings are further supported by plaintiff's emergency room visits in June 2003 and May 2004 for breathing problems (Tr. 229-234, 240-41, 248-49), and are consistent with Dr. Dammel's findings noted above. Plaintiff has been treated with numerous different asthma and allergy medications, including a home nebulizer with Albuterol, and allergy injections. (Tr. 205, 218, 243-245, 263).

The Commissioner points to spirometry testing showing "normal results." (Doc. 12 at 14, citing Tr. 199, 201, 237-39, 264, 285). A careful review of the record indicates that the results of at least some of the "pre-med" results were in fact obtained while plaintiff was using her Advair medication. (See Tr. 204–5/13/02 results "while on Advair 250/50;" 9/9/02 results "on Advair 500/50."). In any event, these findings do not detract from Dr. Ghory's opinion.

15

Dr. Ghory's assessment of moderate to severe persistent asthma was based on a combination of clinical and objective findings, including the positive methacholine challenge test, *i.e.*, "[p]rovocative testing, in which inhaled methacholine . . . is used to provoke broncho-constriction, [and which] is indicated for suspected asthmatics *with normal findings on spirometry* and flow-volume testing, suspected cough-variant asthma and no contraindications." Merck Manual online found at www.merck.com/mmpe/sec05/ch048/ch048a.html?qt=asthma&alt=sh (emphasis added).

Moreover, in choosing to credit the opinion of the non-examining state agency doctors over that of Dr. Ghory, the ALJ failed to accord proper deference to the opinions of the treating specialist. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

Dr. Ghory is an allergy immunology specialist who has treated plaintiff for almost four years. After four years of consistent treatment, Dr. Ghory was certainly in a better position to assess the predictability and severity of plaintiff's asthma attacks than the physicians who never examined plaintiff and who lacked three years worth of medical records in this case. Given the nature of the relationship between Dr. Ghory and plaintiff, her specialty in treating

plaintiff's respiratory impairments, her own findings, and the consistency of her opinion with those of Dr. Dammel, the ALJ erred by failing to accord proper deference to Dr. Ghory's opinion. *See* 20 C.F.R. § 404.1527(d)(5).

To the extent the ALJ relied on the opinions of the two non-examining state agency doctors for the conclusion that plaintiff retains the RFC for a range of medium work, her decision is not supported by substantial evidence. The state agency reviewers offered their opinions in January and March 2003. This was prior to the Appeals Council's remand, before the submission of additional medical records from April 2003 though February 2006 from Dr. Dammel and Dr. Ghory, prior to plaintiff's emergency room visits, and more than three years before the ALJ's March 2006 hearing. The Commissioner's suggestion that the post-March 2003 evidence "did not suggest a significant deterioration in Plaintiff's condition" (Doc. 12 at 15) assumes, incorrectly, that plaintiff was in fact capable of medium work in January and March 2003 as the non-examining agency doctors opined. As explained above, that opinion conflicts with those of Drs. Dammel and Ghory, assessments which were entitled to greater weight as the treating physicians of record. *See Shelman*, 821 F.2d at 321; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

The ALJ's decision improperly failed to accord any weight to the opinions of the two treating physicians and is without substantial support in the record. Considering the weight and deference which is to be given to the treating physicians' reports, the opinions of the non-examining state agency physicians do not constitute substantial evidence supporting the ALJ's RFC finding. Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed.

17

This matter should be remanded for an award of benefits as of March 24, 2005, the date plaintiff turned 50 years old. "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits" as of this date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). Based on the residual functional capacity assessment of Dr. Ghory, plaintiff would be unable to perform even sedentary work. However, Dr. Ghory's assessment was rendered in February 2006, over four years after November 8, 2001, plaintiff's alleged onset date of disability. Dr. Ghory's assessment does not establish plaintiff's entitlement to benefits as of November 2001. Nevertheless, when Dr. Ghory's assessment is taken together with Dr. Dammel's 2003 RFC assessments which limited plaintiff to sedentary work, the proof of disability as of March 24, 2005 is strong and opposing evidence is lacking in substance. As of March 24, 2005, plaintiff was considered an individual closely approaching advanced age, with a limited education who would be considered "disabled" on the grid for sedentary work. *See* §§ 201.00(g), 201.09, 201.10, Appendix 2, 20 C.F.R. Part 404. A remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Accordingly, this matter should be remanded for an award of benefits as of March 24, 2005.

18

**IT IS THEREFORE RECOMMENDED THAT:**

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent

with this opinion and remanded for an award of benefits as of March 24, 2005.

Date: _1/31/08_

_Timothy S. Hogan_
Timothy S. Hogan
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BAMBI DAVIS,
    Plaintiff

      vs                          Case No. 1:06-cv-838
                                    (Beckwith, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant


NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

      Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within FIFTEEN DAYS after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within TEN DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

20